Trina **RICHARDSON**, Plaintiff–Appellant,

v.

**SUNSET SCIENCE PARK CREDIT UNION, a Federally Chartered Credit Union,** Defendant–Appellee.

No. 00–35342.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 11, 2001*

Filed Oct. 5, 2001

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Jacqueline L. Koch, Koch & Deering, Portland, Oregon, for the plaintiff-appellant.

Karen E. Saul, Farleigh, Wada & Witt, P.C., Portland, Oregon, for the defendant-appellee.

Before: THOMPSON, TASHIMA, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Plaintiff Trina Richardson contends on appeal that the district court incorrectly computed the amount of penalty wages owed to her, under state law, by Defendant Sunset Science Park Credit Union and incorrectly determined that she was not entitled to statutory damages under state law because of Defendant's unlawful deduction from her paycheck. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant employed Plaintiff as a loan officer from August 13, 1995, through October 16, 1998. On September 25, 1998, Plaintiff gave Defendant two weeks' notice that she intended to quit her job and that her final day of work would be October 9. Plaintiff and Defendant's manager later

agreed that Plaintiff would work through October 16, 1998.

By the terms of her employment, Plaintiff was entitled to "flexible time off" (FTO) as an employment benefit. Defendant expected employees to use their FTO allowance for "vacation, illness or injury . . . or personal emergencies." According to the employment manual, each employee who worked more than 90 days earned an FTO allowance on each anniversary date. Employees were required to use two weeks' FTO during the year following the award. FTO benefits could not be carried forward past an employee's anniversary date; however, if an employee had FTO remaining at his or her next anniversary date, the manual provided that the employee would be compensated at a rate of 50 percent of his or her regular hourly rate for each remaining FTO hour. The manual was silent as to how, or if, an employee was entitled to compensation for FTO hours at the time an employee ended employment.

As of October 16, 1998, Plaintiff was entitled to 23 hours of FTO. Defendant's manager told Plaintiff that she would be compensated for her FTO hours but did not specify a rate of compensation.

On October 30, 1998, 14 days after Plaintiff ended her employment, Defendant issued a check to Plaintiff to compensate her for her work on October 16, 1998, and her 23 FTO hours.[1] According to the "Earnings Statement" attached to the check, Defendant paid Plaintiff at 100 percent of her regular hourly rate for each FTO hour. Defendant deducted $68.83 from Plaintiff's gross pay to cover the cost of office supplies that Defendant's manager believed that Plaintiff had taken. Plaintiff had not authorized that deduction.

Plaintiff then initiated this action under the federal Fair Labor Standards Act and Oregon's wage and hour laws. She alleged four claims for relief: (1) that Defendant failed to compensate her for all overtime hours in violation of 29 U.S.C. § 207; (2) that Defendant failed to compensate her for all overtime hours in violation of Oregon Revised Statute ("ORS") 653.261; (3) that Defendant withheld $68.83 from her final paycheck without Plaintiff's consent or authorization, in violation of ORS 652.610(3), and that Plaintiff was entitled to a statutory remedy under ORS 652.615; and (4) that Defendant failed to pay Plaintiff her wages when due, in violation of ORS 652.140 and 652.150.

Plaintiff filed a motion for summary judgment. The district court granted the motion with respect to liability on Plaintiff's fourth claim for relief.[2] The rest of the case was tried to the court, which found for Defendant on the two overtime claims.[3] As to the remainder of the case, the court found (1) that Plaintiff was entitled to be compensated for her remaining FTO hours at a rate of 50 percent of her regular hourly rate; (2) that Plaintiff was fully compensated on October 30, 1998; (3) that Defendant overpaid Plaintiff by an amount of $142.60; and (4) that Defendant violated ORS 652.615 when it deducted the $68.83 from Plaintiff's paycheck without her consent.

On Plaintiff's claim for unlawful deduction under ORS 652.615, the court held that, although Defendant had violated the statute, Plaintiff was not entitled to the statutory damages of $200 because Defendant's overpayment of Plaintiff for the

---

1. Plaintiff was compensated on October 15, 1998, for all work through that date.

2. That ruling is not in dispute on appeal.

3. Those claims are not in dispute on appeal.

FTO hours more than offset the unlawful deduction. On Plaintiff's claim for penalty wages under ORS 652.150, the court found that Plaintiff was fully paid on October 30, 1998, and that she was entitled to eight days of penalty wages.

This timely appeal ensued.

## STANDARD OF REVIEW

■ We review the district court's findings of fact for clear error and its conclusions of law de novo. *Barner v. City of Novato*, 17 F.3d 1256, 1258 (9th Cir.1994).

## FTO HOURS

The district court found that, under the terms in Defendant's employment manual, Plaintiff was entitled to compensation for her remaining FTO hours at a rate of 50 percent of her regular hourly rate. That finding is not clearly erroneous.

■ The manual provides: "Any remaining FTO balance over and above two weeks on the last day prior to your anniversary date will be paid out at 50 percent of your current hourly rate of pay." Defendant's manager testified that it was standard practice to reimburse employees for FTO hours at the 50 percent rate. Thus, although the manual does not address specifically the rate at which an employee will be compensated for excess FTO hours upon termination of employment, it is reasonable to conclude that, to the extent the manual authorizes compensation for those hours at all, it is at a rate of 50 percent. Nothing in the manual or in the testimony suggests that a terminated employee would fare better in this respect than a current employee.

Plaintiff argues that, under *Sabin v. Willamette–Western Corp.*, 276 Or. 1083, 557 P.2d 1344 (1976), Defendant is required to compensate her for unused FTO at 100 percent of her regular hourly rate. *Sabin* is materially distinguishable. In *Sabin*, the court held that the plaintiff was entitled to be compensated at his regular salary for vacation time that remained when his employment ended, despite the defendant's policy of not compensating for such time. *Id.* at 1346–47. The court reasoned that the defendant had never informed the plaintiff of its policy and that the evidence supported the conclusion that the plaintiff reasonably expected to be compensated for vacation time. *Id.* at 1347.

By contrast, in this case, Plaintiff knew—indeed, had been told in writing—that Defendant's policy was to compensate employees for unused FTO time but only at a rate of 50 percent of their current hourly rate. Plaintiff never received any information to suggest that Defendant would pay more than that rate for unused FTO time. On this record, Plaintiff could not reasonably have expected compensation at a higher rate.

In short, the record supports the district court's finding that Plaintiff was entitled to be compensated for her 23 FTO hours at 50 percent of her regular hourly rate.

## STATUTORY DAMAGES

The district court held, and the parties do not dispute on appeal, that Defendant violated ORS 652.610[4] when it deducted $68.83 from Plaintiff's final paycheck. What Plaintiff contests is the district

---

4. The district court stated that the deduction violated ORS 652.615, but it appears that the court meant to write that the deduction violated ORS 652.610(3). ORS 652.610(3) prohibits deductions such as the one in this case; ORS 652.615 provides the remedy for those unlawful deductions. The parties do not suggest that the court's mistaken citation has legal significance.

court's legal conclusion that she is not entitled to a statutory penalty under ORS 652.615 for that violation.

As an initial matter, Defendant asserts that Plaintiff did not preserve this issue for appeal because, in deciding it, the district court adopted the recommendation of the magistrate judge and Plaintiff had not objected to the magistrate judge's findings and recommendations. Defendant is incorrect. "It is well-settled law in this circuit that 'failure to file objections [to a magistrate judge's findings] does not waive the right to appeal the district court's conclusions of law.'" *Lisenbee v. Henry,* 166 F.3d 997, 998 n. 2 (9th Cir.) (quoting *Britt v. Simi Valley Unified Sch. Dist.,* 708 F.2d 452, 454 (9th Cir.1983)), *cert. denied,* 528 U.S. 829, 120 S.Ct. 82, 145 L.Ed.2d 70 (1999). The district court's conclusion that ORS 652.615 does not permit Plaintiff to recover a penalty for Defendant's unlawful deduction because of an unrelated overpayment is a conclusion of law, and thus appealable, despite Plaintiff's failure to object to it.

ORS 652.615 provides:

There is hereby created a private cause of action for a violation of ORS 652.610(3) for actual damages or $200, whichever is greater. In any such action the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees.

Contrary to the district court's conclusion, by providing for a *minimum* award of $200 the text of the statute makes it clear that the only prerequisite for relief is that a plaintiff have suffered a violation of ORS 652.610(3). Once a plaintiff has established that violation, the plaintiff is entitled to a minimum of $200, whether or not actual damages are shown. ORS 652.615; *see also Allen v. Jackson County,* 169 Or. App. 116, 7 P.3d 739, 760 (2000) (Edmonds, J., concurring) (stating that, when it enacted ORS 652.615, "the legislature contemplated that there will be instances in which deductions are made by employers in violation of ORS 652.610(3), but will result in no wages owing when due. In those instances, the employee's sole remedy will be under ORS 652.610(3) and ORS 652.615.").

Two Oregon Court of Appeals cases further support the conclusion that Defendant cannot escape the statutory penalty under ORS 652.615 on a theory that the overpayment of FTO benefits offsets the unlawful deduction. In both *Stanich v. Precision Body & Paint, Inc.,* 151 Or.App. 446, 950 P.2d 328 (1997), and *Kling v. Exxon Corp.,* 74 Or.App. 399, 703 P.2d 1021 (1985), the Oregon Court of Appeals held that an employer is not entitled to credit amounts voluntarily overpaid to a former employee against amounts that the employer owes in penalty wages under ORS 652.150, in the absence of a showing by the employer that the "voluntary overpayments" were (1) intended by the employer to satisfy its penalty-wage obligation and (2) accepted by the employee with an understanding of that intention. *Stanich,* 950 P.2d at 336; *Kling,* 703 P.2d at 1024.

Although ORS 652.615 is a different penalty statute than that implicated in *Stanich* and *Kling,* there is no principled reason under Oregon law to apply a different rule here. Because Defendant's payments to Plaintiff were not intended to satisfy any penalty obligations, but rather were intended (albeit erroneously) to satisfy its obligation to compensate her for FTO hours, Defendant is not entitled to offset any amount of overpayment against its obligation to pay a penalty for its violation of ORS 652.610(3). Plaintiff's actual damages resulting from the unlawful deduction are at most $68.83; therefore, under ORS 652.615, Plaintiff is entitled to $200. Under *Stanich* and *Kling,* Defendant is not

entitled to offset that amount by the amount it overcompensated Plaintiff for FTO hours.

## PENALTY WAGES

ORS 652.150 governs an employee's entitlement to penalty wages and explains how they are computed:

> If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 ..., then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days from the due date....

In order to determine the amount of penalty wages to which Plaintiff is entitled, we must (1) identify the date on which Plaintiff's final wages were due to her under Oregon law; (2) analyze whether, under the statute, penalty wages accrue on all days or on workdays only; and (3) determine whether the district court correctly concluded that Plaintiff was paid in full on October 30, 1998.

A. *Whether the district court correctly determined that Plaintiff's wages were due to her on October 16, 1998.*

■ ORS 652.140 governs the date on which an employee's final compensation is due following the termination of employment. It provides, in pertinent part:

> (1) Whenever an employer discharges an employee or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge or termination shall become due and payable not later than the

end of the first business day after the discharge or termination.

> (2) When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment.

The parties dispute whether ORS 162.140(1) or (2) governs the date on which Plaintiff's final paycheck became due. The district court held that subsection (2) governs this case because, the court found, Plaintiff "quit employment" after giving notice more than 48 hours in advance of her intent to quit. That finding is not clearly erroneous. Plaintiff did give notice of her intent to quit; there is no evidence in the record that her decision to quit was by mutual agreement and not unilateral.

Defendant suggests that the decision to end Plaintiff's employment was by "mutual agreement" because Plaintiff and Defendant's manager agreed that Plaintiff would work through October 16, instead of leaving on October 9 as she originally intended. But the fact that Plaintiff and Defendant's manager "mutually agreed" to a particular ending date does not mean that they "mutually agreed" to terminate Plaintiff's employment, which is what the statute requires. The decision to end the employment relationship was wholly Plaintiff's.

Consequently, ORS 652.140(2) governs this case. Under the terms of that provision, "all wages earned and unpaid" were due to Plaintiff "immediately" on October 16, 1998.

B. *Whether penalty wages under ORS 652.150 accrue on workdays only.*

■ Defendant contends that Plaintiff is entitled to penalty wages only for work-

days until she is paid wages and compensation due. By contrast, Plaintiff argues that she is entitled to receive penalty wages for each day she goes unpaid, workdays and weekends, for a maximum of 30 days. We agree with Plaintiff's interpretation of the statute for three reasons.

First, the text and context of the statute are clear.[5] The penalty continues at a specified rate "per day" for up to "30 days." ORS 652.150. The statute says nothing about normally scheduled workdays in computing the penalty. We would have to add the word "work" to the statute for it to have Defendant's chosen meaning. That we may not do. ORS 174.010; *see also J.R. Simplot Co. v. Dep't of Revenue*, 321 Or. 253, 897 P.2d 316, 320 (1995) (stating that the court "must avoid inserting that which the legislature omitted").

Contextual clues also make Plaintiff's interpretation plain. When the legislature intends that *only* workdays are relevant to a particular computation, it says so directly. *See, e.g.*, ORS 652.140 (providing that payment is due on "first business day" after termination of employment and "excluding Saturdays, Sundays and holidays" from a particular period). Additionally, the statute's use of an arbitrary eight-hour day shows that the former employee's actual workday is irrelevant. The employee might have worked 6 or 10 hours per day, but the statute specifies a consistent measurement for the penalty.

Second, the Oregon Court of Appeals has implicitly adopted the interpretation advocated by Plaintiff. In *Vento v. Versatile Logic Systems Corp.*, 167 Or.App. 272, 3 P.3d 176, 177–78 (2000), the defendant employer argued that, even if it were liable to the plaintiff for penalty wages under

ORS 652.150, a $1,000 payment made to the plaintiff on December 6, 1996, fully compensated the plaintiff for any wages due. To determine whether the payment would have compensated the plaintiff for both earned wages and penalty wages on that date, the court computed the amount of penalty wages to which the plaintiff would have been entitled on December 6, 1996. *Id.* at 178. After determining that the plaintiff's wages were due on November 28, 1996, the court outlined the penalty wage computation: "defendant potentially owed plaintiff $80 per day ($10 multiplied by 8 hours) for the seven [consecutive] days between those dates, or a total of $560 in penalty wages." *Id.* It is clear from the court's summary that it did not exclude nonworkdays from its computation—November 30, 1996, and December 1, 1996, were weekend days. Thus, the court interpreted ORS 652.150 in the manner advocated by Plaintiff.

Finally, Plaintiff's interpretation makes sense in view of the apparent purpose of the statute. The legislature has chosen to penalize employers who do not pay final wages on time; the use of a wage rate to help calculate the penalty is not a wage replacement for hours that would have been worked, but rather is a means of calculating the penalty for delay during which the employer wrongfully has the use of the former employee's money. Moreover, Defendant's interpretation would take a straightforward statute and render it hard to administer. Employers and employees would begin to debate whether a particular weekend was one on which the employee might have worked, for example.

In sum, under ORS 652.150 Plaintiff is entitled to penalty wages for each day,

---

**5.** *Portland General Electric Co. v. Bureau of Labor & Industries*, 317 Or. 606, 859 P.2d 1143 (1993), sets forth the analytic framework for the interpretation of Oregon statutes. It

provides that, if the legislature's intent is clear from the text and context of a given statute, then "further inquiry is unnecessary" and, indeed, impermissible. *Id.* at 1146.

workdays and weekend days, for up to 30 days, that the wages owed to her remained unpaid.

C. *Whether the district court's finding that Plaintiff was "fully paid" as of October 30, 1998, was clearly erroneous.*

The district court found that Plaintiff was compensated "in full" on October 30, 1998. That finding is not clearly erroneous. Her final paycheck compensated her for the eight hours for which she had not been compensated previously, as well as for her remaining FTO benefits. Because the check overpaid Plaintiff for the FTO benefits by $142.60, even though Defendant unlawfully deducted $68.83 from Plaintiff's check, the net result was that Plaintiff received all compensation owed to her.[6]

D. *The amount of penalty wages owed to Plaintiff.*

The district court held that Plaintiff was entitled to eight days' penalty wages. That holding is incorrect as a matter of law. Computing the penalty wages due to Plaintiff in the manner outlined in *Vento*, Plaintiff is entitled to penalty wages for each of the 13 intervening days between October 16 and October 30: from October 17 through October 29. In other words, she is entitled to 13 × $99.20 (8 hours × $12.40/hour = $99.20) = $1,289.60. Under *Stanich*, Defendant is not entitled to offset the amount that it overpaid Plaintiff for the FTO hours against its penalty-wage obligation. *Stanich*, 950 P.2d at 336.

---

**6.** This finding is not inconsistent with our earlier conclusion that Plaintiff is entitled to statutory damages for Defendant's unlawful deduction. It simply means that this is one of those situations, identified by Judge Edmonds

CONCLUSION

The correct rate of compensation for Plaintiff's FTO hours was 50 percent of her regular hourly rate.

Defendant violated ORS 652.610(3), for which Plaintiff is entitled to an award of $200.

Plaintiff also is entitled to 13 days of penalty wages under ORS 652.150, which amounts to $1,289.60.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for entry of a judgment consistent with this opinion. Each party is to bear its own costs on appeal.

in *Allen v. Jackson County,* 169 Or.App. 116, 7 P.3d 739, 760 (2000) (Edmonds, J., concurring), in which no wages remain due to an employee, even though the employer had made an unlawful deduction.